**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-1760-WJM

LISA A. REYES,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

    Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING TO THE COMMISSIONER**

---

    This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Lisa A. Reyes ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability and social security benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

    For the reasons set forth below, the ALJ's denial of benefits is reversed and the case is remanded to the Commissioner for rehearing.

## I. BACKGROUND

### A. Procedural Background

    Plaintiff filed a claim for disability benefits on January 27, 2009 (Admin. Record ("R.") at 12)   Plaintiff alleged a disability onset date of February 1, 1992 due to "bipolar, PTSD, and anxiety". (*Id.*)  The claim was denied initially on April 9, 2009.  (*Id.*) Plaintiff

then filed a written request for a hearing on April 27, 2009. (*Id.*) A hearing was held on October 12, 2010, which was continued through to January 31, 2011 due to last minute submissions of evidence by Plaintiff. (*Id.*) The hearing before ALJ Wendland resulted in an unfavorable decision for Plaintiff dated March, 2011. (*Id.*)

### B. Factual Background

In 2001, Plaintiff was involved in a tragic motor vehicle accident when her car was rear-ended at a high rate of speed, resulting in the death of her five year-old son.[1] (R. 415.) On June 27, 2008, Plaintiff was involved in another motor vehicle accident in which she was taken to Swedish Medical Center for minor injuries, treated and released on the same day. (R. 251 – 262.)

On December 12, 2008, Plaintiff was seen by Denver Health Medical Center ("Denver Health") for a mental health assessment. (R. 271.) Plaintiff reported that she was experiencing flashbacks, nightmares, insomnia, racing thoughts, and avoiding things that reminded her of her son's death. (*Id.*) Plaintiff reported significant problems with appetite, sleep, memory, and attention as well as suicidal ideation and a suicidal attempt. (*Id.*) On December 18, 2008, while being evaluated at Denver Health, Plaintiff further reported that she was experiencing "new anxiety and panic attacks" which had were " worse since the second motor vehicle accident." (R. 268.) She also reported that she experienced flashbacks, as well as reporting problems in memory and concentration. (R. 269.)

---

[1] The precise date of the child's death is not noted in the record; however, Defendant does not dispute this fact.

During the course of 2009, Plaintiff was further seen by Denver Health, where she was treated for, *inter alia*, depression and PTSD. (R. 379-409.) Her medication included Risperdal (.25 mg twice a day) and lithium (300 mg. twice a day). The effects of Plaintiff's medication had mixed results (and side-effects)—including continued mood swings, racing thoughts, anxiety and weight gain.[2] (R. 367-372.)

During the course of 2010, Plaintiff continued to be seen by Denver Health, and on March 9, 2010, Plaintiff presented at the Psychiatric Emergency Services of same. Plaintiff stated that she had a plan to commit suicide by overdosing on prescription medications, which she had not been taking for the last 2-3 weeks because she thought they were no longer helping her. (R. 299.)

On November, 18, 2010, Joseph Pachta, BA (Plaintiff's primary therapist) evaluated Plaintiff's psychological condition.[3] (R. 385.) On Domain Scales Testing, Mr. Pachta evaluated Plaintiff at the 5-7 range. (R. 408-09.) This range indicates "cognitive processes [that] are persistently impaired and may exhibit impaired functioning." (*Id.*) The evaluation also tested for anxiety and depression. Such testing, *inter alia*, indicated persistent and incapacitating effects on most aspects of Plaintiff's daily functioning. (R. 409.)

---

[2] The Court notes that there are numerous visitations to Denver Health during the course of 2009-2011. The Order does not recite each of these visitations, but the Court notes that they are aptly summarized in Plaintiff's briefing. (*See generally*, ECF No. 13-1.)

[3] The record also reflects that Mr. Pachta's treatment of Plaintiff was overseen and appears, from the records to have been closely monitored by the treating physician, Dr. McNamee. For example, see Mr. Pachta's note of December 1, 2010: "thx obtained from the clt the name of her PCP and relayed this information to clt's Psychiatrist, Dr. McNamee." (R. 561.) "Clt will also be seen by Dr. McNamee who will provide psychiatric oversight." (R. 437, 524.)

On December 1, 2010, Plaintiff was again seen by Mr. Pachta, where treatment issues and plans were made. Mr. Pachta's notes reflect detailed psychotheray steps that Plaintiff was taking that shed light on her depression and PTSD symptoms. (R. 409-476.) In particular, at R. 436, a crisis plan was put in place where Plaintiff pledged as follows:

> I, Lisa Reyes, agree not to harm myself or to inflict bodily harm directed toward myself. Furthermore, I agree not to bodily harm leading to the injury of other persons. If I have suicidal or homicidal thoughts, I will call the Mobile Crisis Team, [or] the Suicide Crisis Line [or] go to the nearest emergency room", being Denver Health Medical Center.

On December 17, 2010, Plaintiff was seen by Dr. McNamee for a 40 minute session. (R. 426) She reported that she had stopped taking lithium because of tremors and weight gain, although she was taking all her other medications. (*Id.*) Dr. McNamee opined that Ms. Reyes' symptoms were consistent with PTSD with anxiety resulting from the PTSD. (*Id.*)

### C. The ALJ's Decision

On the March 11, 2011, ALJ Wendland issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[4] The ALJ found that Plaintiff's depression, post traumatic stress disorder (PTSD), and anxiety were "severe" impairments. (R. 14.) The ALJ determined that Plaintiff retained the residual functional

---

[4] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

capacity ("RFC") to perform a wide range of light work, with limitations including no workplace hazards; the ability to understand, remember, and carry out simple instructions; and superficial contact with coworkers and no required interaction with the general public. (R. 16.) Because her RFC exceeded the requirements of her past work as a stock clerk, the ALJ found she could not perform her past work. (R. 19.) Nevertheless, the ALJ found that other work existed in the national economy that Plaintiff could perform; therefore, she did not meet the strict standard for disability under the Act. (*Id.*)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision on Plaintiff's entitlement to disability benefits to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d

476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant is represented by counsel. *Id.* at 480.

### III. ANALYSIS

The Appeals Council denied Plaintiff's request for review on the ALJ's decision. (ECF No. 7-2.) Plaintiff filed this action seeking review of that decision. On appeal, Plaintiff raises two arguments: (1) the ALJ's RFC findings are not based on substantial evidence, (2) the ALJ's credibility findings are conclusory and fail to properly assess the credibility of Plaintiff's testimony. (ECF No. 14 at 4.) Related to the second argument is the contention that the ALJ has erred because paragraphs in the decision reflect 'boilerplate' language that fails to link the conclusory statement to relevant evidence.

Because the Court finds that the ALJ's RFC was not supported by substantial evidence, and failed to fully and fairly develop the record, the Court finds that such error requires remand. Since similar deficiencies meant that the ALJ did not fully examine Plaintiff's testimony, the Court also finds that the ALJ credibility findings are deficient and require further consideration.

### A. RFC Not Supported by Substantial Evidence

Plaintiff first challenges the ALJ's RFC determination on grounds that the ALJ's findings fail to meet the substantiality test. (ECF no. 13-1 at 23.)

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of the most a claimant can do despite his or her limitations. *Id.* Examples of the types of

evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs and laboratory findings, and medical source statements. Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996):

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*See*, SSR 96–8p. The ALJ's findings regarding the RFC must, therefore, be supported by substantial evidence and based on all *of the relevant evidence*. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999); *Winfrey*, 92 F.3d at 1023.

Here, Plaintiff contends that the ALJ erred in relying exclusively on the Mental Residual Functional Capacity Assessment and the Psychiatric Review Technique form ("Reports")—both completed by Ellen Ryan, M.D. (a State Agency physician)—to determine the Plaintiff's RFC. (R. 233-237) For the reasons that follow, and based on review of *all* the relevant evidence in the record, the Court finds deficiencies in the ALJ's RFC determination. *See Winfrey v. Chater*, 92 F.3d 1017, 1023. The reasons are two-fold.

First, Dr. Ryan's Reports were completed on April 9, 2009. (R. 249) Notwithstanding the fact that the Reports were written well before the ALJ hearing, it is

apparent from the decision that the ALJ afforded Dr. Ryan much weight in making the determination against Plaintiff's disability claim—a determination that was made on March 4, 2011. (ECF No. 7-2 at 4.) Indeed, in making the medical impairment findings, the ALJ makes no express reference (by name) to any other doctor or therapist that treated Plaintiff's symptoms. This is deficient because even upon a cursory review of the record, it is clear that there is plentiful evidence that addresses Plaintiff's medical history and medical source statements; all of which would be relevant to an assessment of whether there is substantial evidence to support the ALJ's findings (or not). (R. 279-584); *see Winfrey*, 92 F.3d at 1023.

Accordingly, because the substantial evidence test has not been properly met—because the ALJ did not consider all relevant evidence from the entire record—the Court finds that remand is required to resolve such deficiencies.[5] *See* Soc Sec. Ruling (SSR) 96–8p (stating that an ALJ must make specific RFC findings based on *all of the relevant evidence* in the case record); *see also Flaherty*, 515 F.3d at 1070 (stating that a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met").

Second, and related to the first reason, the Court finds that the ALJ has failed to fully and fairly develop the record. *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (stating that the duty to "develop the record pertains even if the claimant is

---

[5] There are numerous examples in the record of Plaintiff's visits to Denver Health between 2009-2011. A good number of these visits are noted in the Background Section of this Order.

represented by counsel.")  Other than conclusory statements made by the ALJ, there is nothing in the record that demonstrates meaningful consideration of all the evidence post April-2009.  For example, there is no meaningful consideration of evidence supplied by Dr. McNamee and Mr. Pachta.  This deficiency is puzzling given the detailed psychological assessment that Mr. Pachta provides in the record. The psychological assessment specifically examines Plaintiff's (1) depression, (2) cognitive abilities, and (3) anxiety levels.  (R. 408-11.)  These tests have been addressed earlier in the Order on page 3.  The assessment also examined how each of these factors impact Plaintiff's daily functioning.  (*Id.*) [6]  Such evidence seems to be at odds with Dr. Ryan's evidence, but it is difficult to discern with certainty given the absence of the analysis by the ALJ.  This only reinforces the need for remand in this case.  *See* SSR 96–8p (stating that an adjudicator must explain material inconsistencies in the record).

Accordingly, because the ALJ has erred in not fully developing the record, the Court finds that the matter warrants remand for further consideration.[7]  *See Hawkins*,

---

[6] Plaintiff's medical record from late 2010 through to early 2011 indicate regular visits between Plaintiff and Mr. Pactha, under the oversight of Dr. McNamee, for some time leading up to the hearing on January 2011.  (R. 437,524.)  It is difficult to discern from the ALJ decision whether all relevant evidence from this period was considered.  Notwithstanding this, the ALJ decision does make reference to November 2010 and January 2011 dates. So, presumably, evidence relevant to these dates was before the ALJ, but it seems that the ALJ has not fully examined all of the relevant evidence during these time periods.  (ECF No. 7-2 at 17.)

[7] The ALJ's failure to examine Mr. Pactha's evidence is not consistent with broader policy statements that provide guidance in cases such as the present.  *See generally* SSR 06-03p:  "With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are *important and should be evaluated on key issues* such as impairment severity and functional effects, along with the other

113 F.3d at 1164 (stating that the ALJ has a duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues.")

### B. The ALJ Erred in determining the Plaintiff's Credibility

Plaintiff next attacks the ALJ's credibility findings as being conclusory. The Court agrees. The ALJ states:

> [W]hile the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, [the undersigned] finds the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(ECF No. 7-2 at 16)

Notwithstanding the ALJ's reference to the RFC, conclusory paragraphs of this *kind* have been heavily criticized by the courts. For example, in *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (Posner, J.) the court called the above language (or variants thereof) as constituting "meaningless boilerplate" language. In that case, the paragraph was couched as follows: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's

---

relevant evidence in the file." (*emphasis added*.)

While Defendant acknowledges that Mr. Pachta is a licensed counselor, suggestion is made in Defendant's briefing that the ALJ did not need to consider his evidence. (ECF No. 11.) This argument runs in the face of SSR 06-03p, above. Despite this, the Court does acknowledge that non-medical sources are not to be given controlling weight, but some weight must be afforded to the such non-medical sources for the purpose of determining disability under the statute. Indeed, the policy statements reflecting the purpose of the statute, support this view. *Id.* But, in this case, there is also evidence in the record that Mr. Pacta was under the oversight of Dr. McNamee, which would tend to bolster the evidence of the former in support of Plaintiff's disability. This, however, is ultimately for the ALJ to decide on remand.

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Parker*, 597 F.3d at 922.  The Seventh Circuit held that such paragraphs—couched in these terms are conclusory—and reasoned that such language "yields no clue to what weight the trier of fact gave the testimony." *Id.* Moreover, Tenth Circuit authorities suggest that conclusory paragraphs (like the instant) fail to inform the "court in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).

Here, and consistent with *Parker*, Plaintiff similarly argues that the ALJ's paragraph yields no clue as to what weight he gave Plaintiff's testimony.   The Court agrees.  Indeed, the Court finds that the ALJ deals with Plaintiff's testimony by ignoring it into irrelevance.  It marginalizes the testimony without any meaningful (evidentiary) analysis. This is not enough under *Parker,* nor is it consistent with Tenth Circuit authority, which, too, calls into question the use of such paragraphs in ALJ decisions. *See Hardman,* 362 F.3d at 679 (stating that "[s]tandard boilerplate language will not suffice [because it] fails to inform the court in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's credibility.")

In sum, the Court finds that the ALJ's conclusory findings, as to Plaintiff's credibility, are insufficient, warranting remand of the ALJ's decision. *Id.*

### C. Remaining Arguments

To the extent that Plaintiff raises additional issues related to the sufficiency of the underlying proceedings, the Court expresses no opinion.   Neither party, however, should take the Court's silence as tacit approval or disapproval of how the evidence was

considered. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal). It is entirely possible that, given the passage of time, the ALJ could arrive at the same conclusion as it did before and find that Plaintiff is not disabled, but before doing so, and as the Court has noted earlier, there must be some meaningful review of (1) Dr. McNamee (2) Mr. Pachta, and (3) Mr. Reyes' evidence to determine Plaintiff's disability claim.

As such, the Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

### IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 27th day of June, 2013.

BY THE COURT:

William J. Martinez
United States District Judge